IN THE UNITED STATES DISTRICT COURT FILED
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION   02 MAY 23 PM 3:59

U.S. DISTRICT COURT
N.D. OF ALABAMA

JERRY R. AKE, et al.,

    PLAINTIFFS,

v.                         CASE NO. CV-00-J-3571-S

TENNESSEE VALLEY AUTHORITY

    DEFENDANT.

ENTERED
MAY 23 2002

## MEMORANDUM OPINION

This cause comes before the court on the defendant's motion for summary judgment (doc. 33), the defendant's evidence and memorandum in support of said motion, the plaintiffs' evidence and response in opposition to defendant's motion (doc. 47), and the defendant's reply. The court having considered the foregoing and being of the opinion the motion for summary judgment is due to be granted, shall so rule by separate order.

## FACTUAL BACKGROUND

In the light most favorable to the plaintiffs, the court finds the relevant facts to be as follows:

Sixty six (66) plaintiffs remain in this litigation. The defendant Tennessee Valley Authority (TVA) has moved for summary judgment on all remaining plaintiffs' claims except for plaintiff Douglas Haman.[1] The plaintiffs assert that the defendant violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, because the plaintiffs are not paid an overtime rate

_____

[1] For purposes of this opinion only, the court thus does not include Mr. Haman within the term "plaintiffs."

53

of time and a half for time worked in excess of forty (40) hours in one week. The defendant argues that plaintiffs are all exempt from the overtime compensation requirements of the FLSA because each of the plaintiffs is within either executive, professional or administrative exceptions to the overtime pay requirements. Brief in support of defendant's motion, at 2.

The plaintiffs are all public sector employees.[2] The FLSA is applicable to public sector employees. *See Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985); *Davis v. City of Hollywood*, 120 F.3d 1178, 1180 (11th Cir. 1997). The majority of the plaintiffs (56) are professional engineers in defendant's employ. The rest of the plaintiffs are either health physicists (3); supervisors (3); or operations support specialists (4). The plaintiffs agree that no plaintiff earns less than $250.00 per week. Plaintiffs' brief in support of plaintiffs' opposition, at 2. The plaintiffs are all represented by the Engineering Association, Inc. (EA), the bargaining unit for all non-management employees in positions involving professional engineering, architectural, chemical, economic, and computer systems functions; all employees in positions involving professional, scientific and program planning and administration functions, and all employees in positions involving inspection and aide or technical functions in engineering and scientific fields. Declaration of John Long, Jr., ¶ 3. The plaintiffs are all subject to a collective bargaining agreement between defendant TVA and the EA, which sets forth the

---

[2]TVA is a federally owned corporate agency created by the Tennessee Valley Authority Act of 1933, 16 U.S.C. §§ 831-831ee. Thus, the plaintiffs are regarded as federal employees. *See Hill v. TVA*, 842 F.Supp. 1413, 1416, n.2 (N.D.Ala.1993); *Jones v. TVA*, 948 F.2d 258, 262 (6th Cir.1991).

terms of plaintiffs' employment. Declaration of Long, ¶ 7. Pursuant to that agreement, employees who are considered exempt under the FLSA, and thus not entitled to any overtime pay, are either paid additional straight time pay or given compensatory time for overtime worked. *Id*.

Each plaintiff is paid a yearly salary in bi-weekly increments, receiving 1/26 of his or her salary every two weeks. Declaration of Long, ¶ 4. They are subject to the Federal Annual and Sick Leave Act of 1951 and may take leave according to the terms of that Act. 5 U.S.C. §§ 6301-6340.

The plaintiffs work in one of three areas: the Browns Ferry nuclear plant, the Transmission/ Power Supply (TPS) organization,[3] or the Fossil and Hydro power organization. The plaintiffs essentially make two arguments: (1) they are not really exempt salaried employees because their pay can be docked for partial day absences or violations of rules and (2) they have no discretion or independent judgment.

The plaintiffs assert that because they must take vacation and sick leave in half hour increments, with disciplinary action for errors, they are not treated as salaried employees. Complaint at ¶ III.2. Further, plaintiffs claim that defendant's requirement that they work fixed schedules, eight (8) hours a day, forty (40) hours per week, and eighty (80) hours per every two week pay period is evidence that they are not treated as salaried employees. Complaint at ¶ III.3. Additionally, the plaintiffs state defendant's requirement that they work

---

[3]The TPS system moves electric power from generating plants to distributors and customers. Declaration of Hancock, ¶ 2.

strict shift rotations during power outages and their inability to change their schedule or work hours is evidence that they are not treated as salaried employees. Complaint at ¶ III. 5. TVA policy requires that FLSA exempt employees may not be suspended except either for more than an entire work week or for major safety violations. Declaration of Long, ¶ 9 and exhibit 3 thereto.

## II. Standard of Review for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a

genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). The substantive law will identify which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## LEGAL ANALYSIS

### The Fair Labor Standards Act

The FLSA requires employers subject to the Act to pay time-and-a-half overtime compensation to employees who work more than forty hours a week. 29 U.S.C. § 207;

*Yourman v. Guiliani*, 229 F.3d 124, 127 (2nd Cir. 2000). However, the Act and its regulations exempt from this requirement any employee paid on a salary basis more than $250.00 per week and who is employed in a bona fide executive, administrative, or professional capacity. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.3.[4] " A 'salary basis' employee is defined as an employee who, under his employment agreement, regularly receives each pay period a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity or the work performed. 29 C.F.R. §§ 541.118(a); 541.312; *Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994). The employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work. 29 C.F.R. § 541.118(a). Furthermore, deductions in pay for disciplinary violations are inconsistent with compensation on a salary basis. *Yourman*, 229 F.3d at 128; citing *Auer v. Robbins*, 519 U.S. 452, 456, 117 S.Ct. 905, 909, 137 L.Ed.2d 79 (1997).

The exemptions for bona fide professional, administrative, and professional employees are narrowly construed against the employer and in favor of the employee. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). Whether the exemption applies to an employee is an affirmative defense on which the

---

[4]The FLSA is greatly supplemented by regulations promulgated by the Administrator of the U.S. Dept. of Labor, Wage and Hour Division. These regulations are given "the force and effect of law." *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977).

employer has the burden of proof. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974).  Defendant, as the employer, must prove that each employee is exempted by plain and unmistakable evidence. *Hodgson v. The Klages Coal and Ice Co.*, 435 F.2d 377, 382 (6th Cir.1970), *cert. denied*, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971).

Courts have generally referred to the exemptions under the regulations as consisting of a "long test" and a "short test." *See e.g. Elwell v. University Hospitals Home Care,* 276 F.3d 832, 837-38 (6th Cir.2002).  Employees who are paid a salary in excess of $250.00 are subject to the short test. *Id; Bohn v. Park City Group,* 94 F.3d 1457, 1461 (10th Cir.1996). The parties do not dispute that the plaintiffs each earn in excess of $250.00 per week.  Brief in support of plaintiff's opposition at 2.  As such, the court shall apply the short test, which has two component parts: (1) compensation in excess of $250.00 per week and (2) a "duties" test. *See e.g.*, 29 C.F.R. § 541.315.  The second component requires a showing that the employee's primary duty is work that requires the consistent exercise of discretion and judgment. *See Bohn,* 94 F.3d at 1461.  The duties test also has an additional component depending on whether an employee is exempt as a professional, executive, or administrator. "The purpose of the salary basis test is to distinguish 'true' executive, administrative and professional employees from non-exempt employees, i.e. employees who may be disciplined "by piecemeal deductions from ... pay." *Yourman*, 229 F.3d at 130. The plaintiffs assert in part:

1. They do not "direct or perform" the decision making process and have no control over employment, hiring or termination;

2. They must take vacation and sick leave in ½ hour increments with disciplinary action taken if error is identified;

3. They are required to work fixed schedules with defined thirty minute meal periods;[5] and account for eight hours a day, forty hours a week and eighty hours every two weeks; and

4. They must submit to strict shift rotations during outages.

Brief in support of plaintiffs' opposition at 2. Based on these claims, the court examines the duties each of the plaintiffs performs in light of plaintiffs' allegations that: 1) their work is strictly controlled by written procedure and 2) that there is no proof before this court that they perform work of such substantial importance to management that it can be said to directly relate to management policies or general business operations.

**The professional employees:**

Because each of the plaintiffs earn in excess of $250.00 per week,[6] the defendant must prove for the professional employees: (1) that the plaintiffs were each compensated on a salary basis; (2) that their primary duties consist of the performance of work requiring

---

[5]The defined thirty minute meal period is pursuant to the collective bargaining agreement. *See* exhibit 1 to Long declaration, p. 21, ¶ 6.

[6]The professional plaintiffs' salaries range from $65,807.32 per year to $95,056.00 per year with most falling in the $80,000.00 per year range for the Browns Ferry plant and the $70,000.00 range for the transmission system plants. *See* Def. Exh. 1.

knowledge of an advanced type in a field of science or learning; and (3) that the plaintiffs'

responsibilities include work requiring the consistent exercise of discretion and judgment.

*Debejian v. Atlantic Testing Laboratories, Ltd.*, 64 F.Supp.2d 85 (N.D.N.Y.1999); citing

*Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 534 (7th Cir.1999) (quoting 29 C.F.R. §

541.315). "Knowledge of an advanced type" is defined as knowledge which cannot be

attained at the high school level, knowledge in a field of science or learning, and knowledge

customarily acquired by a prolonged course of specialized intellectual instruction and study."

29 C.F.R. §§541.301(a)-(d). *See also Bohn v. Park City Group, Inc.*, 94 F.3d 1457, 1462

(10th Cir.1996). Given as examples are " ... engineering [and] ...various types of physical,

chemical, and biological sciences ..." 29 C.F.R. § 541.301(e)(1). An advanced education

alone is not determinative, rather, the focus is on whether the particular position in question

requires such advanced knowledge. *Dybach v. State of Florida Dep't of Corrections,* 942

F.2d 1562, 1565 (11th Cir.1991).

### The Browns Ferry Nuclear Plant Engineers

The majority of the plaintiffs before the court are engineers at various locations within

the TVA structure. Of the engineers, the majority of them are employed at defendant's

Browns Ferry Nuclear Plant ("Browns Ferry"). The engineering plaintiffs all assert that

because their work is controlled by written procedures and criteria to determine the methods

by which work is accomplished, they are not true "professionals." *See e.g.*, Defendant exh. 2 at 24.[7]

The court notes that, being engineers at a nuclear power plant, each of the following plaintiffs is subject to the regulations of the Nuclear Regulatory Commission. *See* Wiggall declaration, ¶¶ 2-8. In order for the Browns Ferry plant to be licensed to operate, numerous safety standards must be met. *See* 10 C.F.R. Part 50 (2001). Pursuant to this license, technical specifications governing the operation of the facility are identified and include plant safety limits, conditions of operation, plant testing requirements, and reporting requirements. *See* Wiggall declaration, ¶¶ 2-8; 10 C.F.R. § 50.59.

Plaintiff Beason has a bachelor's degree in Civil Engineering and is employed by defendant as a civil engineer at the principal level.[8] Defendant exhibit 2 at 23. He states that all of his job duties are engineering related and require a knowledge of engineering principles. *Id.* Until January, 2000, his ability to determine the method of accomplishing his work was limited to recommending different possible solutions to problems and providing

---

[7]Defendant submitted plaintiffs' answers to interrogatories as defendant's exhibit 2 to motion for summary judgment. Plaintiff submitted these same answers to interrogatories in excerpt form in support of their opposition to summary judgment (doc. 47). The court, where relevant, cites to defendant's exhibit 2 when referring to these answers, as that exhibit contains the entire response of each plaintiff, including the responses contained in plaintiffs' submissions.

[8]Plaintiffs Beason, Deal, Kiker, Locke, Dollar, Sampson, West, Ballard, Dias, McCall, McPeters, Stevens, Elmerick, Emens, Greem, Henry, Loscalzo, Mingus, Northern and Groom are design engineers. They develop and maintain the nuclear plant's design basis, implement and maintain the plant's configuration program, and develop solutions to plant problems. Wiggall declaration, ¶¶ 9-11

technical advice. *Id.* at 24. Since January, 2000, when he was promoted to manager, he makes decisions independently on engineering problems, consulting with the lead engineer on unusual problems. *Id;* defendant exhibit 1. He has checked the quality of peers' work, and independent reviews of other employees' work, which are fundamental components of quality assurance at a nuclear power plant. Defendant exhibit 2 at 25. He admits that his job requirements meet those listed in the job description for principal engineers. *Id.* at 26.

Plaintiff Deal has a bachelor's degree in Civil Engineering, and further coursework in structural engineering. *Id.* at 30. He is employed by defendant as a civil engineer at the senior engineer level. *Id.* at 28. He performs peer checks and independent reviews of other employees work. *Id* at 32. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 33.

Plaintiff Kiker has a bachelor's degree in Civil Engineering. *Id.* at 35. He is employed by defendant as a civil engineer at the principal level. *Id.* at 46-47; def. exh. 1 at 1. He states his job requires the use of knowledge obtained in part through an engineering degree and in part through further specialized training. Def. exh 2 at 37. Plaintiff Kiker's duties included writing and revising procedure and performing work within these revised procedures. *Id.* at 40, 43. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 47.

Plaintiff Locke has a bachelor's degree in Civil Engineering. Defendant exhibit 1. He is employed by defendant as a civil engineer at the senior engineer level. Defendant exhibit 2 at 48. He performs peer checks and independent reviews of other employees' work.

11

*Id*. at 52.  He admits that his job requirements meet those listed in the job description for senior level engineers.  *Id*. at 53.

Plaintiff Dollar has a bachelor's degree in Electrical Engineering.  *Id*. at 57.  He is employed by defendant as a electrical engineer at the senior engineer level.  *Id*. at 55, 57.  Performance of his job is aided by knowledge obtained through his degree.  *Id*. at 57.  He has checked the technical accuracy of other employees' work.  *Id*. at 59.  He admits that his job requirements meet those listed in the job description for senior level engineers, except that his work is scheduled by his principal engineer.  *Id*. at 61.

Plaintiff Sampson is employed by defendant as an electrical engineer at the principal engineer level.  *Id*. at 63.  He has a bachelor's degree in Electrical Engineering.  *Id*. at 65.  He states that, at a minimum, the knowledge acquired from a bachelor's degree is needed to perform his job.  *Id*. at 66.  He provides technical direction to other engineering employees and makes work assignments.  *Id*. at 72.  He was promoted to manager June 18, 2001 and is now supervisor over plaintiff Dias.  *Id*. at 113.  He admits that his job requirements meet those listed in the job description for principal level engineers.  *Id*. at 78.

Plaintiff West has a bachelor's degree in Electrical Engineering. *Id*. at 91.  He is employed by defendant as a electrical engineer at the senior engineer level.  *Id*. at 89.  He states he uses his formal education as well as work experience to perform his job.  *Id*. at 92.  He performs peer checks and independent reviews of other employees' work.  *Id*. at 94.  He admits that his job requirements meet those listed in the job description for senior level

engineers, except that he does not schedule, plan, conduct or coordinate projects. *Id*. at 96. He provides technical assistance and mentoring to new hires. *Id*.

Plaintiff Ballard has a bachelor's degree in Electrical Engineering. *Id*. at 101. He is employed by defendant as an instrument and control engineer at the principal engineer level. *Id*. at 99. The majority of his work requires him to use his formal education. *Id*. at 101. He performs technical reviews, design cost estimates, and scheduling. *Id*. He performs peer checks and independent reviews of other employees' work. *Id*. at 102. He admits that his job requirements meet those listed in the job description for principal level engineers, except he has not directed the work of lower level engineers. *Id*. at 104.

Plaintiff Dias has a bachelor's degree in Mechanical Engineering and a master's degree in Engineering Management. *Id*. at 108. He is employed by defendant as an instrument and control engineer at the senior engineer level. *Id*. at 106. His job requires knowledge obtained through his engineering degree. *Id*. at 109. He performs peer checks and independent reviews of other employees' work. *Id*. at 114. He is supervised by plaintiff Sampson. *Id*. at 113. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id*. at 121.

Plaintiff McCall has a bachelor's degree in Electrical Engineering and a masters of science in Nuclear Engineering. *Id*. at 126. He is employed by defendant as an instrument and control engineer at the senior engineer level. *Id*. at 124. He performs peer checks and independent reviews of other employees' work. *Id*. at 132. He admits that his job requirements meet those listed in the job description for senior level engineers, except that

his work is scheduled by his principal engineer and lead engineer.  His only involvement with scheduling is limited to providing status updates for his work assignments.  *Id.* at 139.

Plaintiff McPeters has a bachelor's degree in Electrical Engineering.  *Id.* at 144.  He is employed by defendant as an instrument and control engineer at the senior engineer level. *Id.* at 142.  His job requires him to use knowledge acquired from his degree and personal work experience.  *Id.* at 144.  He performs peer checks and independent reviews of other employees' work.  *Id.* at 146.  He admits that his job requirements meet those listed in the job description for senior level engineers, except for directing the work of lower level engineers.  *Id.* at 147.  However, he does provide technical advice and mentoring to new hires.  *Id.* at 147-148.

Plaintiff Stevens has a bachelor's degree in Electrical Engineering.  *Id.* at 152.  He is employed by defendant as an instrument and controls engineer at the senior engineer level. *Id.* at 150.  He states an engineering degree is required to analyze and evaluate a design change with respect to nuclear safety.  *Id.* at 152.  He performs peer checks and independent reviews of other employees' work.  *Id.* at 153.  He admits that his job requirements meet those listed in the job description for senior level engineers.  *Id.* at 154.

Plaintiff Elmerick has a bachelor's degree in Mechanical Engineering.  *Id.* at 158.  He is employed by defendant as a mechanical engineer at the senior engineer level.  *Id.* at 156. He states an engineering degree is required to analyze and evaluate a design change with respect to nuclear safety.  *Id.* at 152.  He performs peer checks and independent reviews of

other employees' work. *Id*. at 164. He admits that his job requirements meet or exceed those listed in the job description for senior level engineers. *Id*. at 171.

Plaintiff Emens has an associate degree in Electronic Engineering and a bachelor's degree in Physics. *Id*. at 174. He is employed by defendant as a mechanical engineer at the principal level. *Id*. at 173. His job requires the use of knowledge obtained from his formal education. *Id*. at 174. He performs peer checks and independent reviews of other employees' work as well as providing technical direction to employees in his group. *Id*. at 176. He admits that his job requirements meet those listed in the job description for principal level engineers. *Id*. at 177.

Plaintiff Green has a bachelor's degree in Mechanical Engineering. *Id*. at 181. He is employed by defendant as a mechanical engineer at the senior engineer level. *Id*. at 179. He states that performance of his job is aided by the knowledge obtained through his engineering education and ten years in the nuclear power industry. *Id*. at 182. He performs peer checks and independent reviews of other employees' work. *Id*. at 187. He admits that his job requirements meet those listed in the job description for senior level engineers, except that his work is scheduled by his principal engineer and lead engineer and he does not direct, schedule or coordinate the work of lower level engineers. *Id*. at 194.

Plaintiff Henry has a bachelor's degree in Electrical Engineering. *Id*. at 198. He is employed by defendant as a mechanical engineer at the senior level. *Id*. at 196. Performance of his job requires the use of his formal education and his personal work experience from 23 years in the nuclear power industry. *Id*. at 198. He performs peer checks and independent

15

reviews of other employees' work. *Id.* He admits that his job requirements meet those listed in the job description for senior level engineers, except that he does not direct or coordinate the work of lower level engineers. *Id.* at 199.

Plaintiff Loscalzo has a bachelor's degree in Mechanical Engineering Technology. *Id.* at 203. He is employed by defendant as a mechanical engineer at the principal level. *Id.* at 201. He performs peer checks and independent reviews of other employees' work. *Id.* at 204. He has assisted in planning, scheduling and providing direction to those employees who report to him. *Id.* at 204-205. He admits that his job requirements meet those listed in the job description for principal level engineers. *Id.* at 206, 207, 209.

Plaintiff Mingus has a bachelor's degree in Mechanical Engineering. *Id.* at 218. He is employed by defendant as a mechanical engineer at the principal level. *Id.* at 215. His job duties require the use of knowledge obtained through his formal education. *Id.* at 218. He performs peer checks and independent reviews of other employees' work. *Id.* at 219. He also provides technical direction to the employees he supervises. *Id.* at 220. He admits that his job requirements meet those listed in the job description for principal level engineers. *Id.* at 221.

Plaintiff Northern has a bachelor's degree in Mechanical Engineering. *Id.* at 226. He is employed by defendant as a mechanical engineer at the senior level. *Id.* at 224. His position requires both a mechanical engineering degree and additional training on an industry software program. *Id.* at 227. He performs peer checks and independent reviews of other employees' work. *Id.* at 232. He is supervised by plaintiff Groom. *Id.* at 231. He admits

16

that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 239.

Plaintiff Groom is employed by defendant as a metallurgical engineer at the principal level. *Id.* at 241. He has a bachelor's degree and a master's degree in Mechanical Engineering. *Id.* at 243. He is plaintiff Northern's supervisor. *Id.* at 231. He supervises, coordinates and reviews the work of engineers and technicians, including making work assignments and assisting with work tasks. *Id.* at 250. He participates in the preparation of performance appraisals of other employees. *Id.* at 251. He admits that, for the most part, his job requirements meet those listed in the job description for principal level engineers. *Id.* at 256.

Plaintiff Gilbert is employed by defendant as a systems engineer at the senior level.[9] *Id.* at 258. He has a bachelor's degree in Mechanical Engineering. *Id.* at 260. His job requires the knowledge obtained through an engineering degree. *Id.* at 261. He performs peer checks and independent reviews of other employees' work. *Id.* at 266. Additionally, he checks the quality of work performed by craft technicians and coordinates the work of technicians in the Predictive Monitoring group. *Id.* at 266-267. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 273.

---

[9]The system engineers "improve the plant systems' performance and reliability by proactive identification and resolution of plant issues, and provide[] technical assistance to the plant's operation and maintenance departments." Wiggall declaration, ¶ 12. Plaintiffs who are system engineers are: Gilbert, Turner, Willard, Carter, Duffy, Pohl, Srinivas, Beck, Denney, Hargis, Hicks, Hill, Rickets, Ford, Thomas Simmons, Curths, McCormack, Daniel Simmons, Allen Smith and Wetzel. Defendant's exhibit 1.

Plaintiff Turner is employed by defendant as a systems engineer at the senior level. *Id.* at 275. He has a bachelor's degree in Chemistry. *Id.* at 277. He performs peer checks and independent reviews of other employees' work. *Id.* at 278. He submits proposed schedules for programs, work and resources, particularly during power outages. *Id.* He admits that his job requirements meet those listed in the job description for senior level engineers, except that his degree is in Chemistry rather than engineering, and he does not direct or coordinate the work of lower level engineers. *Id.* at 279.

Plaintiff Willard is employed by defendant as a systems engineer at the specialist level. *Id.* at 281. He has a bachelor's degree in Nuclear Engineering. *Id.* at 283. He performs peer checks and independent reviews of other employees' work. *Id.* at 285. During refueling outages, he is responsible for planning, coordination and direction for a pressure test performed just prior to startup. *Id.* at 286. He admits that his job requirements meet those listed in the job description for specialist level engineers. *Id.* at 288.

Plaintiff Carter is employed by defendant as a systems engineer-electrical at the senior level. *Id.* at 289. He has a bachelor's degree in Electrical Engineering. *Id.* at 291. He states that his position requires a bachelors degree. *Id.* at 292. He performs peer checks and independent reviews of other employees' work. *Id.* at 298. As a systems engineer, he makes recommendations for work to be performed. *Id.* at 299. H admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 305-321.

18

Plaintiff Duffy is employed by defendant as a systems engineer-electrical at the principal level. *Id.* at 322. He has a bachelor's degree in Electrical Engineering. *Id.* at 324. He performs peer checks and independent reviews of other employees' work. *Id.* at 326. He also provides technical direction to other engineering employees, which includes work assignments. *Id.* at 326. He also reviews performance appraisals. *Id.* at 327. He admits that his job requirements meet those listed in the job description for principal level engineers. *Id.* at 328.

Plaintiff Pohl is employed by defendant as a systems engineer-electrical at the senior level. *Id.* at 330. He has a bachelor's degree in Electrical Engineering. *Id.* at 332. He performs peer checks and independent reviews of other employees' work. *Id.* at 338. He also makes recommendations into the plant schedule for work to be performed, but does not schedule that work. *Id.* at 339. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 345.

Plaintiff Srinivas is employed by defendant as a systems engineer-electrical at the senior level. *Id.* at 347. He has a bachelor's degree and a master's degree in Electrical Engineering and an MBA. *Id.* at 349. His work requires engineering knowledge, experience and training. *Id.* at 352. He performs peer checks and independent reviews of other employees' work. *Id.* at 362. He also plans, directs and coordinates work associated with the systems assigned to him. *Id.* at 364. His work is directed by plaintiff Duffy. *Id.* at 368. He admits that his job requirements meet those listed in the job description for senior level

engineers, except that he does not coordinate or direct the work of lower level engineers of multiple disciplines. *Id*. at 376.

Plaintiff Beck is employed by defendant as an instrument engineer- systems, at the principal level. *Id*. at 379. He has a bachelor's degree in Electrical Engineering. *Id*. He states his job duties require an engineering degree or equivalent training. *Id*. He performs peer checks and independent reviews of other employees' work. *Id*. at 381. He admits that his job requirements meet those listed in the job description for a principal level engineer, except resource utilization and leave approval is performed by his supervisor. *Id*. at 382.

Plaintiff Denney is employed by defendant as an instrument and controls engineer-systems at the specialist level. *Id*. at 384. He has a bachelor's degree in Electrical Engineering. *Id*. at 386. He performs peer checks and independent reviews of other employees' work. *Id*. at 388. He admits that his job requirements meet those listed in the job description for specialist level engineers. *Id*. at 390.

Plaintiff Hargis is employed by defendant as an instrument and controls engineer-systems at the principal level. *Id*. at 392. He has a bachelor's degree in Electrical Engineering. *Id*. at 394. He provides technical direction to other engineering employees, including making work assignments and assisting in completion of tasks. *Id*. at 395. He performs peer checks and independent reviews of other employees' work. *Id*. He admits that his job requirements meet those listed in the job description for principal level engineers. *Id*. at 396.

Plaintiff Hicks is employed by defendant as an instrument and controls engineer-systems at the specialist level. *Id.* at 398. He has a bachelor's degree in Electrical Engineering. *Id.* at 400. He performs peer checks and independent reviews of other employees' work. *Id.* at 401. He admits that his job requirements meet those listed in the job description for specialist level engineers. *Id.* at 402.

Plaintiff Hill is employed by defendant as an instrument and controls engineer-systems at the specialist level. *Id.* at 404. He has a bachelor's degree and a master's degree in Nuclear Engineering. *Id.* at 406. He performs peer checks and independent reviews of other employees' work. *Id.* at 408. He admits that his job requirements meet those listed in the job description for specialist level engineers. *Id.* at 411.

Plaintiff Ricketts is employed by defendant as an instrument and controls engineer-systems at the senior level. *Id.* at 413. He has an Associate degree in Electronic Engineering, nuclear power instrumentation option. *Id.* at 415. He performs peer checks and independent reviews of other employees' work. *Id.* at 421. He admits that his job requirements meet those listed in the job description for senior level engineers, except that he does not hold a bachelor's degree, but meets the equivalents instead. *Id.* at 428.

Plaintiff Ford is employed by defendant as an NSSS system engineer at the senior level. *Id.* at 430. He has a bachelor's degree in Chemical Engineering. *Id.* at 431. He estimates that 20% of his work requires knowledge obtained through acquisition of an engineering degree. *Id.* He performs peer checks and independent reviews of other employees' work. *Id.* He admits that his job requirements meet those listed in the job

description for senior level engineers, except he does not direct the work of other personnel, but does help in planning and scheduling projects. *Id*. at 432.

Plaintiff Thomas Simmons is employed by defendant as an NSSS system engineer at the senior level. *Id*. at 434. He has a bachelor's degree in Mechanical Engineering. *Id*. at 436. He states that all his job duties require the knowledge he obtained through an engineering degree. *Id*. at 436. He performs peer checks and independent reviews of other employees' work. *Id*. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id*. at 437.

Plaintiff Curths is employed by defendant as a system engineer- BOP at the principal level. *Id*. at 439. He has a bachelor's degree in Chemistry and a masters degree in Chemical Engineering. *Id*. at 441. He performs peer checks and independent reviews of other employees' work. *Id*. at 448. Since September, 2000, he is the lead technical engineer which requires him to ensure that assigned tasks for his work group are completed on time. *Id*. at 449. His main role is to coordinate and equalize the work load. *Id*. at 450. He provides performance appraisal recommendations for three senior engineers and one journeyman engineer. *Id*. at 451. He denies that his job requirements meet those listed in the job description for principal level engineers, but states this is because he does not direct a large project, or numerous small projects and cannot hire, fire, or disciple.[10] *Id*. at 456.

---

[10]The court notes this is not part of his job description.

Plaintiff McCormack is employed by defendant as a system engineer-BOP at the senior level. *Id.* at 458. He has a bachelor's degree in Mechanical Engineering. *Id.* at 460. He states that an engineering degree is required to perform his duties. *Id.* He is supervised by and gets his work assignments from plaintiff Allen Smith. *Id.* at 463, 465. He performs peer checks and independent reviews of other employees' work. *Id.* at 464. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 467.

Plaintiff Daniel Simmons is employed by defendant as a system engineer-BOP at the senior level. *Id.* at 469. He has a bachelor's degree in Mechanical Engineering with further coursework towards a masters degree in engineering administration. *Id.* at 471. He states his job duties require engineering knowledge. *Id.* He performs peer checks and independent reviews of other employees' work. *Id.* at 472. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 474.

Plaintiff Allen Smith is employed by defendant as a system engineer-BOP at the principal level. *Id.* at 475. He has a bachelor's degree in Chemistry and a bachelor's degree in Chemical Engineering. *Id.* at 477. He performs peer checks and independent reviews of other employees' work. *Id.* at 480-481. He also coordinates and provides technical assistance to senior level engineers. *Id.* at 481. He participates in the preparation of performance appraisals for plaintiffs McCormack and Simmons. *Id.* at 482. He admits that his job requirements meet those listed in the job description for principal level engineers,

except that performance objectives are determined by supervisors and he is not given the authority to approve leave. *Id*. at 484.

Plaintiff Wetzel is employed by defendant as a system engineer-BOP at the senior level. *Id*. at 486. He has a bachelor's degree in Nuclear Engineering. *Id*. at 488. He states that many of his job duties require knowledge acquired through his engineering degree. *Id*. at 489. He performs peer checks and independent reviews of other employees' work. *Id*. at 492. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id*. at 497.

Plaintiff Curry is employed by defendant as a maintenance and modification engineer at the senior level.[11] *Id*. at 499. He has an Associates of Engineering degree in electricity and electronics, plus further coursework in electrical engineering. *Id*. at 501. He states he uses the knowledge acquired through his education as well as ten years in the nuclear industry to perform his job. *Id*. He performs peer checks and independent reviews of other employees work. *Id*. at 505. He admits that his job requirements meet those listed in the job description for senior level engineers, except he does not hold a bachelor's or master's degree in engineering. *Id*. at 507.

Plaintiff Evans is employed by defendant as an instrument and controls engineer at the senior level.[12] *Id*. at 509. He has an Associate degree in Electronic Engineering, Nuclear

---

[11]He plans and implements the preventative maintenance program for electrical maintenance at Browns Ferry. Declaration of Rogers, ¶¶ 2-3.

[12]Plaintiffs Evans and Gamble prepare and revise maintenance instructions and procedures at Browns Ferry. Declaration of Rogers, ¶¶ 2-3.

Power option. *Id*. at 511.  He performs peer checks and independent reviews of other employees' work. *Id*. at 517.  He admits that his job requirements meet those listed in the job description for senior level engineers, except that he does not schedule work, but only provides status updates for his work assignments, and does not coordinate the work of lower level engineers. *Id*. at 524.

Plaintiff Stacey Reid was employed by defendant as an instrument and controls engineer at the senior level, until his retirement in March, 2001.[13] *Id*. at 526; defendant's exhibit 1.  He has a bachelor's degree in Electrical Engineering.  Def. exh. 2 at 527.  He performed peer checks and independent reviews of other employees' work. *Id*. at 533.  He admits that his job requirements met or exceeded those listed in the job description for senior level engineers. *Id*. at 540.

Plaintiff Gamble is employed by defendant as a mechanical engineer at the senior level. *Id*. at 542.  He has a bachelor's degree in Mechanical Engineering. *Id*. at 545.  He states that an engineering degree or extensive equivalent training with many years of hands on training is required to perform the work he does. *Id*. at 547.  He performs peer checks and independent reviews of other employees' work. *Id*. at 558.  He admits that his job requirements meet or exceed those listed in the job description for senior level engineers. *Id*. at 572.

---

[13]He planned and implemented the preventative maintenance program for the instrument and controls maintenance organization at Browns Ferry.  Declaration of Rogers, ¶¶ 2-3.

The Browns Ferry Nuclear Plant Physicists[14]

Plaintiff Bohlender is employed by defendant as a health physicist at the principal level. Defendant exhibit 2 at 574. He has an Associate degree in Radiation and Nuclear Technology as well as a bachelor's degree in elementary education. *Id.* at 576. He states he has considerable latitude to define work needs, and is expected to apply health physics principles, physics, mathematics, computers and biology without supervisory intervention or support. *Id.* at 580. His work is governed by federal regulations, but he has latitude in interpreting the degree of compliance required. *Id.* He performs peer checks and independent reviews of other employees' work. *Id.* at 582. He plans, schedules, directs and coordinates the work of Radiological Control ALARA staff. *Id.* at 583. He submits requests for additional personnel to his manager for approval, has authority to approve leave for staff and assigns routine and special projects to staff. *Id.* He admits that his job requirements meet or exceed those listed in the job description for principal level scientists. *Id.* at 590.

Plaintiff Howard is employed by defendant as a health physicist at the specialist level. *Id.* at 592, 593. He has a bachelor's degree in Biology. *Id.* at 594. Plaintiff Bohlender is his supervisor. *Id.* at 600. He performs peer checks and independent reviews of other employees' work. *Id.* at 601. He admits that his job requirements meet or exceed those listed in the job description for specialist level scientists. *Id.* at 610.

---

[14]Plaintiffs Bohlender, Howard and Scarboro design radiological safety precautions and write radiological safety procedure. Declaration of Coleman, ¶ 3.

Plaintiff Scarboro is employed by defendant as a health physicist at the senior scientist level. *Id.* at 613; defendant exhibit 1. He has an associate degree in science and technology with a specialization in nuclear engineering technology, and has a bachelor's degree in Radiation protection. Defendant exhibit 2 at 612. His position requires knowledge obtained through an appropriate engineering degree or equivalent training. *Id.* at 613. Plaintiff Bohlender is his supervisor. *Id.* at 617, 621. He performs peer checks and independent reviews of other employees' work. *Id.* at 618. He admits that his job requirements meet or exceed those listed in the job description for senior level scientists. *Id.* at 625.

The court notes that each of these engineering and physicist plaintiffs asserts he cannot direct his own work because it must be in compliance with written procedures and guidelines. Plaintiffs rely on 29 C.F.R. § 541.207(a), which states that "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct in acting or making a decision after the various possibilities have been considered...." The court notes that § 541.207(a) follows the heading "Employee Employed in a Bona Fide Administrative Capacity" and applies to employees exempt under the administrative exemption. The court cannot discern from the plaintiffs' brief in opposition to defendant's motion for summary judgment if plaintiffs are abandoning their claims against the defendant for the professional employees. Thus, the court notes only that this section does not apply to any plaintiff except for those employed in an administrative capacity, discussed *infra. See e.g., Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 534 (7th Cir.1999)

(noting that only the administrative exempt employee must exercise "independent" judgment).

The court cannot help but consider that these engineers and physicists all work at a nuclear power plant. The court finds compliance with written procedures and guidelines to be distinguishable from a lack of authority to make independent choice, free from immediate direction. The plaintiffs agree that the written procedures and guidelines for engineers in the nuclear power industry come from both defendant and federal agencies such as the Nuclear Regulatory Agency. Further, the court notes that each of the above plaintiffs state they are given job assignments which they must perform, and given written guidelines they must follow. However, conspicuously absent from their interrogatory answers is any claim that their supervisors tell them how to perform their engineering or scientist duties.[15]   For example, plaintiff Curry states his job entails "establishing, revising, and reviewing procedures for the performance of maintenance tasks ...."  Defendant exhibit 2 at 502. Plaintiff Kiker states his job entails writing and revising procedures and performing work within those revised procedures.  *Id.* at 40-43.  Plaintiff Ballard designs cost estimates and schedules. *Id.* at 99.  Plaintiffs Emens and Loscalzo provide technical direction to employees in their groups.  *Id.* at 176, 204-205.  Plaintiff Groom makes work assignments and

---

[15]The court finds plaintiff engineers' arguments akin to this court stating it lacks discretion and independent judgment because it must follow written procedure such as the Federal Rules of Civil Procedure, which dictate how this court may conduct its work.  Clearly, given the plaintiffs' argument that written procedure and criteria prevent the exercise of discretion, no one but self employed artists and the like could be found to have discretion and independent judgment.

participates in the preparation of performance appraisals of other employees. *Id.* at 251. Plaintiff Gilbert performs quality checks. *Id.* at 266-267. Plaintiff Turner submits proposed schedules for programs, work and resources during power outages. *Id.* at 278. Plaintiff Carter makes recommendations for work to be performed. *Id.* at 298. Plaintiff Srinivas plans, directs and coordinates work associated with the systems assigned to him. *Id.* at 364. Plaintiff Curths is a lead technical engineer whose main role is to coordinate and equalize workload. *Id.* at 450. Plaintiff Allen Smith coordinates and provides technical assistance to senior level engineers. *Id.* at 481. Plaintiff Bohlender plans, schedules, directs and coordinates the work of Radiological Control ALARA staff. *Id.* at 583. The court finds all of the above described job duties involve the "consistent exercise of discretion and judgment" and is work which is "predominantly intellectual and varied in character." *See* 29 C.F.R. §§ 541.305(a); 541.306(a). Each of these plaintiffs coordinate, direct and/or plan their own and others' work, as well as undertake tasks that are intellectual and varied in character. The court finds, from plaintiffs' own answers to interrogatories, that the plaintiffs absolutely exercise judgment and discretion, subject to peer review.

The Transmission/Power Supply Plaintiff Engineers

Plaintiff Ake was employed by defendant as a system engineer at the senior level in the TPS system.[16] Def. Exh. 2 at 738. He has since been promoted to manager. Def. Ex. 1

---

[16]Plaintiffs Ake (prior to his promotion), Brown, McDonald, Morris and Stovall have responsibility for the soundness and proper functioning of the transmission system. Declaration of Hancock, ¶ 3.

at 4. He has a bachelor's degree in Electrical Engineering as well as a degree in Engineering

Management. Def. Exh. 2 at 740. He states that:

> Working as a system engineer in TVA requires many different methods for
> performing our work. Some are laid out in detailed written procedures' (sic)
> others are used as general guidelines such as our Field Test Manual. Other
> methods are detailed engineering studies to determine the best course of action
> to be taken as well as technical trouble shooting skills that are used in the
> restoration of out of service equipment. The short answer is that we are the
> technical expert (sic) in our field and we use whatever method or methods that
> we deem appropriate for each particular problem or job task.

*Id.* at 741. He performs peer checks and independent reviews of other employees' work. *Id.*

at 741-742. He admits that his job requirements meet or exceed those listed in the job

description for senior level engineers.[17]  *Id.* at 743.

Plaintiff Brown is employed by defendant as a system engineer at the senior level in

the TPS system. *Id.* at 755. She has a bachelor's degree in Electrical Engineering. *Id.* at

757. She performs peer checks and independent reviews of other employees' work. Id. at

758. She coordinates activities to ensure completion of projects on schedule and makes

recommendations on the urgency of corrective maintenance. *Id.* at 759. She admits that her

job requirements meet those listed in the job description for senior level engineers. *Id.* at

760.

_____

[17]Plaintiff Ake states that he is wrongfully not paid time and a half in overtime
compensation. He states he lacks hiring, firing, termination and work schedule decisions and has
little input in the decision making area. Additionally, the accounting of sick and annual leave in
half-hour increments as well as having to work a set schedule convinces him he is not treated as
a salaried employee. Def. Exh. 2 at 954. In part, plaintiff Ake bases his claim that he is not paid
overtime compensation in accordance with the FLSA on his understanding that TVA lost
lawsuits for not paying contract engineers time and a half for overtime. *Id.* at 955.

Plaintiff Steven McDonald is employed by defendant as a system engineer at the senior level in the TPS system. *Id.* at 775.  He has a bachelor's degree in Electrical Engineering, and a bachelor's degree in Forestry. *Id.* at 777.  He states that performance of his job requires knowledge obtained through the acquisition of an electrical engineering degree. *Id.* at 778.  He states that he "uses my engineering judgment and experience to determine the methods by which I do my work ....  For any work carried out in critical circuits, I develop and write procedures which specify the order and method by which work is carried out ...." *Id.* at 781.  He performs independent reviews of other employees' work. *Id.* at 783.  McDonald states that "some of the instructions that I use to perform my work are written procedures that I develop and write." *Id.* at 786.  He admits that his job requirements meet those listed in the job description for senior level engineers, except he does not plan or schedule work. *Id.* at 790.

Plaintiff Morris is employed by defendant as a system engineer at the senior level in the TPS system.  Defendant exhibit 1 at 4.  He has a bachelor's degree in Electrical and Computer Engineering.  Defendant exhibit 2 at 801.  He states he uses the knowledge acquired through his education to perform his job duties. *Id.* at 802-803.  He is responsible for determining the methods he uses to do his work. *Id.* at 806.  Morris states that 50% of his present job duties require merging of past experience and new equipment to accomplish a desired end result. *Id.*  He admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 815.

31

Plaintiff Stovall is employed by defendant as a system engineer at the senior level in the TPS system. *Id*. at 817. He has a bachelor's degree in Electrical Engineering. *Id*. at 819. He states that he is a technical expert in his field and uses whatever methods he deems appropriate for each particular problem or job task. *Id*. at 820. He performs peer checks and independent reviews of other employees' work. *Id*. He provides technical direction to employees assigned to him, including making work assignments and coordinating work efforts among different work groups. He also prepares appraisals of individuals assigned to him, including plaintiffs Ake and McDonald. *Id*. at 821. He admits that his job requirements meet or exceed those listed in the job description for senior level engineers. *Id*. at 822.

Plaintiff Baggett is employed by defendant as an electrical engineer at the senior level.[18] *Id*. at 832. He has a bachelor's degree in Electrical Engineering and in Math Education. *Id*. at 833. He states he uses the knowledge acquired through his education as well as on the job training to perform his job. *Id*. at 834. He states that his responsibility for determining the method of accomplishing his work is limited in nature and is mostly confined to "recommending different possible solutions to problems and providing technical advice." *Id*. at 837. He performs peer checks and independent reviews of other employees' work. *Id*. at 839. He has prepared performance appraisals for other employees, including plaintiff

---

[18]His job duties require providing engineering support during the construction, testing and turnover of new capacity and modifications (capital projects) to the TVA transmission system. Declaration of Hall, ¶ 2.

Brown. *Id*. at 841. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id*. at 846.

Plaintiff Ashley McDonald is employed by defendant as a system engineer at the principal level.[19] *Id*. at 853. She has a bachelor's degree in Electrical Engineering. *Id*. at 855. She states her job duties require an engineering degree. *Id*. at 856. She provides administrative and technical supervision to work teams of engineers and others on a daily basis. *Id*. at 856. She states that the "responsibility I have for determining the methods by which I do my work is based on engineering judgment, experience, vendor literature, engineering handbooks, TVA Manuals, procedures, and training." *Id*. at 859. She performs peer checks and independent reviews of other employees' work. *Id*. at 861. McDonald states that she plans, coordinates and directs the work of others on a daily basis. *Id*. at 862. She provides input to performance appraisals of various engineers, including plaintiffs Bogus, Jackson and Pinkard. *Id*. at 863. She admits that her job requirements meet those listed in the job description for principal level engineers. *Id*. at 868.

Plaintiff Bogus is employed by defendant as an electrical engineer at the senior level. *Id*. at 870. He has a bachelor's degree in Electrical Engineering. *Id*. at 872. He states he uses the knowledge acquired through his education as well as on the job training to perform his job. *Id*. at 873. He states that his responsibility to determine the method of

---

[19]Plaintiffs Ashley McDonald, Bogus, Jackson and Pinkard are TPS engineers at Browns Ferry. They are responsible for the proper functioning of electrical power transmissions at the nuclear power plant. Declaration of Hancock, ¶ 4. They prepare testing procedures for preventative maintenance, test and supervise testing equipment to make sure it operates properly, and perform and supervise corrective maintenance. *Id*., at ¶ 5.

accomplishing his work is limited in nature and is mostly confined to "recommending possible solutions during problem-solving tasks or I may also provide technical advice." *Id.* at 877. He performs peer checks and independent reviews of other employees' work. *Id.* at 878-879. He has planned, coordinated, directed and scheduled the work of other employees on a limited basis. *Id.* at 880. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 886.

Plaintiff Jackson is employed by defendant as an electrical engineer at the senior level. *Id.* at 888. He has a bachelor's degree in Electrical Engineering. *Id.* at 890. He states he uses the knowledge acquired through his education to perform his job. *Id.* at 891. He states when performing preventive maintenance, tests, or troubleshooting, he uses existing procedures, methods from the TPS Field Test Manual and individual experience and education. *Id.* at 894. He performs peer checks and independent reviews of other employees' work. *Id.* at 896. His supervisor is plaintiff Ashley McDonald. *Id.* at 897.

Plaintiff Pinkard was employed by defendant as an electrical engineer at the senior level.[20] *Id.* at 903. He has a bachelor's degree in Electrical Engineering. *Id.* at 905. He states he uses the knowledge acquired through his education as well as on the job training to perform his job. *Id.* at 906. He performs peer checks and independent reviews of other employees' work. *Id.* at 912. He is designated as the "back up" Transmission Maintenance Manager and performs planning, scheduling, directing and coordinating activities pursuant

---

[20]Defendant states that Pinkard was promoted to principal engineer on "08/18/02." The court notes this date is more than three months from now. *See* defendant exhibit 1 at 5.

to that role. *Id.* at 913. He admits that his job requirements meet those listed in the job description for senior level engineers. *Id.* at 919.

### The Fossil Hydro Plaintiff Engineer

Plaintiff Yadcus was employed by defendant as a system engineer at the senior level.[21] Id. at 921. He resigned October, 2001. Payton declaration, ¶ 2. He has a bachelor's degree in Electrical Engineering. Defendant exhibit 2 at 923. He uses knowledge from his engineering degree and equivalent training in performing his job. *Id.* His job entails determining the most efficient and safe course of action to correct unwanted conditions at the Colbert Fossil Power Plant. *Id.* at 925. He further explains, "no one stands over telling me exactly how to do my job, however before implementing in the plant, I need the buy in of my peers, management and craft organizations." *Id.* He performed peer checks and independent reviews of other employees' work. *Id.*

### The Widows Creek Technical Service Analyst

Plaintiff Ricky Smith is employed by defendant as a Technical Service Analyst at the senior level.[22] *Id.* at 929. While he does not have a four year degree, such a degree is now a job requirement. *Id.* at 932; declaration of Payton, ¶ 3. He was grandfathered in to keep his job and defendant waived the degree requirement. *Id.* at 932; declaration of Payton, ¶ 4.

---

[21]His job was to "improve plant equipment performance and reliability by proactive identification and resolution of engineering issues." Declaration of Payton, ¶ 2.

[22]His job is to "plan, direct, administer, evaluate and modify TVA fossil plant programs ... including preparation of reports evaluating the effectiveness of the water chemistry and scrubber analysis programs." Payton declaration, ¶ 3.

He states some kind of training is necessary to do his job, but whether a degree is necessary is debatable. Defendant exhibit 2 at 932. He performs water analysis and completes reports on water quality required under federal law. *Id.* at 932, 937. He makes adjustments and takes corrective measures to ensure that the units meet the water chemistry specifications set by law. *Id.* at 935. No particular individual checks his work on a daily basis. *Id.* at 936. He is the lead person over NPDES permits in the water chemistry laboratory. *Id.* at 937. He and his coworkers plan, coordinate and schedule the work that needs to be done. *Id.* at 938. He receives little instruction on how to perform his job. *Id.* at 940. He admits that his job requirements meet those listed in the job description for senior scientists, except for not meeting the degree requirement, as stated above. *Id.* at 944.

No mention of any of the above plaintiffs as a group or individuals is made in the plaintiffs' brief in opposition to the motion for summary judgment. The court finds that summary judgment is due to granted in favor of the defendant and against the above plaintiffs on all claims. Clearly, each of these plaintiffs have "knowledge of an advanced type," knowledge in a field of science or learning, and knowledge customarily acquired by a prolonged course of specialized intellectual instruction and study." 29 C.F.R. §§541.301(a)-(d). The regulations defining exempt professionals specifically list jobs within the physical, chemical and biological sciences. *See Bohn*, 94 F.3d at 1462; 29 C.F.R. § 541.301(e)(1). Each of the plaintiffs agreed that his or her  position required the advanced knowledge obtained from a degree, or equivalent, long term training in his or her field.  The exercise of discretion and judgment necessitates consideration and evaluation of alternative courses

36

of action and making a decision after the possibilities have been considered.   29 C.F.R. § 541.305(a) and (b).  The above plaintiffs included such decision making in  stating their job duties.

The fact that the above plaintiffs cannot hire, fire, discipline others or must follow specific methods has no relation to the question of whether they are exempt professional employees.  Obviously, from the way each describes his or her own job in the answers to interrogatories, none of these plaintiffs is told the result he or she must reach.  While the regulations require an employee to exercise independent judgment, "the term does not require this judgment to be made in isolation." *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 535 (7th Cir.1999) (discussing both administrative and professional exemptions).  Clearly, each of these plaintiff's work requires the consistent exercise of discretion and judgment.  29 C.F.R. § 541.3(b); *Owsley v. San Antonio Indep. School Dist.*, 187 F.3d 521, 524-25 (5th Cir.1999).  As another court addressing engineers' judgment in the nuclear power industry has observed "[i]t would be astounding to think that in such a highly regulated, inherently dangerous area, that there would not be peer review and intense scrutiny on any procedure affecting the structural integrity of a nuclear plant." *Kennedy v. Commonwealth Edison Co.*, Case No.: 00-4053 (C.D.Ill.2000) (McDade, Chief Judge).

**Administrative employees:**

An employee is an exempt administrative employee if he or she meets the earnings test ($250.00 per week),[23] and his or her primary duty consists of the performance of office or nonmanual work directly related to management policies or general business operations of his employer, which includes work requiring the exercise of discretion and independent judgment. 29 U.S.C. § 213(a)(1); 29 C.F.R. §§ 541.2(a)(1) and (b), 541.214. *See Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532 (7th Cir.1999). The exercise of discretion and independent judgment necessitates consideration and evaluation of alternative courses of action and making a decision after the possibilities have been considered. 29 C.F.R. § 541.207(a). The exercise of discretion must relate to matters of consequence, but final decision making authority over such matters is unnecessary. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.,* 203 F.3d 326, 331 (5th Cir.2000); citing *Reich v. John Alden Life Ins, Co.*, 126 F.3d 1, 13 (1st Cir.1997). *See also Dymond v. United States Postal Serv.*, 670 F.2d 93, 69 (8th Cir.1982) ("Even though an employee's work is subject to approval, even to the extent that a decision may be reversed by higher level management, it does not follow that the work did not require the exercise of discretion and independent judgment ....").

Plaintiff Marston is employed by defendant as a maintenance specialist for valves at Browns Ferry.[24] Def. Ex. 2 at 672. He has a bachelor's degree in Industrial Technologies.

---

[23]These plaintiffs' salaries range from $64,561.96 per year to $76,168.59 per year.

[24]He ensures that the administrative requirements for valve maintenance are followed, but does no actual maintenance work himself. Declaration of Rogers, ¶ 5.

*Id.* at 673. He assists valve engineers, managers and craftsmen in performing field related activities such as reviewing work orders, coordinating minor work activities, trending valve maintenance history, and serves as ASME Section IX tracking coordinator for mechanical maintenance.[25] *Id.* at 674. As part of his duties, he maintains a valve database used by engineers for part and historical information. *Id.* at 683. He also maintains a temporary leak repair database. *Id.* He admits his job duties meet the standards set forth in the job description of a maintenance specialist. *Id.* at 687.

Plaintiff Noblitt is employed by defendant as a maintenance specialist for maintenance and modifications at Browns Ferry.[26] *Id.* at 688. His duties include site crane coordinator, preparing and reviewing mechanical maintenance instructions, snubber coordinator and duty maintenance engineer. *Id.* at 691. He states that "latitude is provided in determining the best methods to perform work <u>within the guidelines</u> of written established procedure & industry standards (emphasis in original)." *Id.* at 694. He checks the quality of other employees' work and his work is subject to review by others. *Id.* at 695-696. He is responsible for coordinating crane inspections with outside crane inspectors at the TVA Power Service Shop. *Id.* at 697. He admits his job duties meet the standards listed in the job description of a maintenance specialist. *Id.* at 704.

---

[25]ASME Section IX refers to an engineering code which establishes requirements for operation and maintenance of equipment at nuclear power plants. *See* 10 C.F.R. § 50.55a.

[26]He has overall responsibility for the maintenance program for all cranes and other lifting equipment at Browns Ferry. Declaration of Rogers, ¶ 4. He does not actually perform the maintenance work himself. *Id.*

Plaintiff John Reid is employed by defendant as a maintenance specialist for maintenance and modifications at Browns Ferry.[27] *Id.* at 705; def. exh. 1 at 3. He has a high school diploma. *Id.* at 706. He writes procedure and serves as a valve testing coordinator. *Id.* at 707. He checks the quality of other employees' work and his work is subject to review by others. *Id.* at 711-712. He states that his job duties exceed those of a maintenance specialist and are actually "more in line with the senior engineer level classification, with the exception of education requirements." *Id.* at 719.

Plaintiff Camp is employed by defendant as a project control specialist - scheduler at Browns Ferry.[28] *Id.* at 721; defendant exhibit 1 at 4. He has an associate degree in Business. Defendant exhibit 2 at 722. He prepares a daily work week schedule of work to be done pursuant to a twelve week "rolling schedule." *Id.* at 723; declaration of Hollins, ¶ 3. This involves desk work with communication, preparation and final adjustments to get a schedule ready for implementation. He is always working on one of three work week schedules at any given time. Defendant exhibit 2 at 723. He checks other schedulers' work and they check his. *Id.* at 729. He lays out work required by the plant on a schedule by which the work will be performed. *Id.* at 730; declaration of Hollins, ¶ 3-4. He states that his job duties meet those of the operations support specialist classification. Defendant exhibit 2 at 736.

---

[27]He is in charge of the testing, diagnosis and maintenance of motor-operated valves at Browns Ferry. Declaration of Rogers, ¶ 6. He schedules testing, reviews testing and based on comparisons to prior tests, recommends necessary maintenance work. He also prepares, revises and reviews maintenance procedures for other equipment at Browns Ferry. *Id.*

[28]He retired January 4, 2002. Defendant exhibit 1 at 4.

These four plaintiffs perform little, if any, manual labor or mechanical work. Rather, they are responsible for planning and coordinating details to set work schedules for others, making sure necessary equipment and parts are present as needed, and that equipment, parts and information are available when needed. According to their answers to interrogatories, plaintiff Marston maintains databases for use by engineers. Plaintiff Noblitt coordinates crane inspections and creates instructions for mechanical maintenance. Plaintiff John Reid writes procedure, serves as a valve testing coordinator and states that his duties are actually "more in line with the senior engineer level classification...." Defendant exhibit 2 at 719. Plaintiff Camp prepares a daily work week schedule for work to be done. Clearly, all of these duties require the use of discretion and independent judgment on a daily basis. Thus, the court finds that these four plaintiffs meet the duties test for work of an administrative nature. *See e.g. Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261 (5th Cir. 2000) (plaintiffs coordinating work for the construction of ships are exempt administrative employees). *See also Piscione,* 171 F.3d at 537 ("Just because an employee may spend a significant portion of his time engaged in ministerial or routine tasks does not necessarily prevent the application of the administrative exemption").

Additionally, the court notes that the work of each of these plaintiffs is "directly related" to general business operations. They essentially keep the work in defendant's plant flowing. Such individuals are specifically included in the administrative exemption. See 29 C.F.R. § 541.205(c) ("The phrase also includes a wide variety of persons ... whose work

41

affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business").

**Executive employees**:

To qualify as an exempt executive employee, an individual must meet the earnings test ($250.00 per week),[29] have the primary duty of management and must regularly direct the work of two or more other employees. 29 C.F.R. § 541.1(f). *See also* 29 C.F.R. § 541.102; *West v. Anne Arundel County, MD*, 137 F.3d 752, 763 (4th Cir.1998). This includes primary duties of training, supervising, disciplining, directing, planning, evaluating employees, determining techniques to be used, apportioning work, determining materials and supplies needed and providing for the safety of employees and the property. 29 C.F.R. § 541.102(b). Hiring and firing authority, or suggestions and recommendations about hiring and firing which are given weight is evidence of supervisory duties, as is the exercise of discretionary powers. *See Cowan v. Treetop Enterprises*, Inc., 120 F.Supp.2d 672, 688 (M.D.Tenn.1999).

---

[29]These plaintiffs' salaries range from $62,810.13 per year to $71,795.30 per year.

Browns Ferry Radcon Leads[30]

Three plaintiffs are radiological control shift leads at Browns Ferry, referred to as "Radcon Leads":[31]

Plaintiff Beers is employed with defendant as a supervisor of the radiological control shift operations staff. Defendant exhibit 2 at 627. This position requires knowledge obtained through on the job training. *Id.* at 630. He schedules personnel assigned to the Field Operations section. *Id.* at 634. He and the four other Radcon leads check the quality of work of the thirty-five technicians in this section. *Id.* at 636. He plans, schedules, directs and coordinates the work of the radiological control technicians; assists with ensuring that adequate staff is available to support plant work activities; submits hiring requests to his manager for approval when he deems additional personnel necessary; approves technicians leave; assigns special projects to individuals; and performs other tasks as well. *Id.* at 637. Beers participates in the preparation of service reviews for technicians in his section. *Id.* at 638. He disagrees that his job duties are as outlined in the job description for supervisors, but states he does meet the qualification requirements for his job duties. *Id.* at 643.

Plaintiff Rozell is employed with defendant as a supervisor of the radiological control shift operations staff. *Id.* at 645. He has a bachelor's degree and is pursuing a masters in

---

[30]Defendant asserts, and plaintiffs do not dispute, that prior to May 24, 1999, the Radcon Lead position was classified as management. At that time, these positions were removed from management and returned to the bargaining unit although the job duties did not change.

[31]Plaintiffs Beers and Rozell supervise crews of approximately 6-7 technicians, who perform radiation surveys, inspections and surveillances, write radiation work permits and provide radiation support for other TVA organizations. Declaration of Coleman, ¶¶ 4-6.

management. *Id.* at 647.  He assigns and supervises personnel assigned to the Field Operations section. *Id.* at 649.  He makes sure radioactive material is properly stored and controlled. *Id.* at 648.  He and the four other Radcon leads check the quality of work of the thirty-five technicians in this section.  *Id.* at 651.  He plans, schedules, directs and coordinates the work of the radiological control technicians; assists with ensuring that adequate staff is available to support plant work activities; submits hiring requests to his manager for approval when he deems additional personnel necessary; approves technicians' leave; assigns special projects to individuals; and performs other tasks as well. *Id.* at 652. Rozell participates in the preparation of service reviews for technicians in his section. *Id.* at 653.  He disagrees that his job duties are as outlined in the job description for supervisors, but states he does meet the qualification requirements for his job duties. *Id.* at 657.

Plaintiff Wilson is employed with defendant as a supervisor of the radiological control shift operations staff.[32]  *Id.* at 659.  He has an associate degree in Radiological Health Technology. *Id.* at 661.  He schedules personnel assigned to the Field Operations section. *Id.* at 664.  He and the four other Radcon leads check the quality of work of the thirty-five technicians in this section. *Id.* at 666.  He plans, schedules, directs and coordinates the work of the radiological control technicians; assists with ensuring that adequate staff is available to support plant work activities; submits hiring requests to his manager for approval when

---

[32]Plaintiff Wilson works with the work planning and scheduling organizations to assure adequate radiological safety support for plant activities.  He also serves as the backup shift supervisor when other Radcon Leads are absent.  Declaration of Coleman, ¶ 4-5.

he deems additional personnel necessary; approves technicians' leave; assigns special projects to individuals; and performs other tasks as well. *Id.* at 667. Wilson participates in the preparation of service reviews technicians in his section. *Id.* at 668. He disagrees that his job duties are as outlined in the job description for supervisors, but states he does meet the qualification requirements for his job duties. *Id.* at 670.

The above plaintiffs are exempt from overtime requirements under the FLSA if each is "an employee with supervisory duties who is paid on a salary basis." *Michigan Assn. of Govt'l Employees v. Michigan Dept. of Corrections*, 992 F.2d 82, 83 (6th Cir.1993). Clearly, each of the Radcon Leads are paid on a salary basis, have primary duties consisting of the management of a customarily recognized department or subdivision of the defendant's business and regularly supervise at least two other employees.[33] *See* 29 C.F.R. § 541.1(f). That is all that is required.

Plaintiffs Beers, Rozell and Wilson each states he schedules personnel, checks the quality of work of the thirty-five technicians in this section, plans, schedules, directs and coordinates the work of the radiological control technicians; assists with ensuring that

---

[33]Plaintiffs argue that "[t]he Defendants (sic) however fail to point out any Radcon Leads who spend any time whatsoever engaged in management duties. Further they fail to point out if any Radcon Leads have the direct and customary regulations (sic) of two or more employees. Giving the description of the Radcom (sic) Leads and the actual activities of the Radcon Leads are two different things. The Plaintiff would refer you to the Radcon Leads answers to interrogatories." Plaintiffs' brief in opposition at 11. Given these plaintiffs' answers to interrogatories and the complete lack of any conflicting evidence submitted by the plaintiffs, the court is mystified by what plaintiffs are actually arguing here. The plaintiffs also rely on 29 C.F.R. § 541.205(c) for support that the Radcon Leads are not within the executive exemption. As that section concerns the administrative exemption only, the court finds plaintiffs' reliance on this regulation misplaced.

adequate staff is available to support plant work activities; submits hiring requests to his manager for approval when he deems additional personnel necessary; approves technicians' leave; and assigns special projects to individuals. *Id.* at 634, 636, 637, 648, 651, 652, 664, 666, 667.   The court finds these three positions clearly fall within the definition of management of a recognized department.

### Reductions in pay

Even if all plaintiffs qualify as exempt employees based on their job duties, they are not considered "salaried" if defendant may reduce their pay for the quality or quantity of their work.   Generally, an employer that maintains the discretion to reduce an employee's compensation as a result of the employee's hours or the quality of the employee's work, may not consider the employee to be paid on a salary basis. *Martin v. Malcom Pirnie, Inc.*, 949 F.2d 611, 615 (2nd Cir.1991).[34]   An employee who can be docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried, employee. *Id.* (citations omitted).

However, since the Second Circuit Court of Appeals made its decision in *Malcom Pirnie*, the Department of Labor adopted 29 C.F.R. § 541.5d, which became effective on September 6, 1991.  That regulation modified 29 C.F.R. § 541.118 as it applied to public sector employees as follows:

---

[34]Plaintiffs rely heavily on *Martin v. Malcom Pirnie, Inc.*  The court questions reliance on that case for the above cited proposition in light of *Auer v. Robbins*, a United States Supreme Court case, discussed *infra*.

(a) An employee of a public agency who otherwise meets the requirements of §541.118 shall not be disqualified from exemption under §§ 541.1, 541.2, or 541.3 on the basis that such employee is paid according to a pay system established by statute, ordinance, or regulation, or by a policy or practice established pursuant to principles of public accountablity, under which the employee accrues personal and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee because –

(1) permission for its use has not been sought or has been sought and denied;

(2) accrued leave has been exhausted; or

(3) the employee chooses to use leave without pay.

29 C.F.R. § 541.5d.  *See also West v. Anne Arundel Co., Maryland*, 137 F.3d 752, 761 n. 4

(4th Cir.1998) (discussing § 541.5d as an exception to the rule that reductions in pay for

partial day absences defeat salary basis).   Even if the plaintiffs were not subject to the above

regulation, they have provided no evidence of reductions in pay.  Having to take vacation or

sick leave in half hour increments is not akin to a reduction in pay.   No evidence of

employees' pay being docked for the quality or quantity of their work is before this court.

Additionally, under the Federal Annual and Sick Leave Act of 1951, 5 U.S.C. §§ 6301-6340,

deductions of vacation or sick time in less than one day increments is irrelevant to

employees' status as an exempt employee because employers can make such deductions of

accrued vacation and sick leave.  *Doherty v. Center for Assisted Reproduction, P.A.,* 108

F>Supp.2d 672, 6778 (N.D.Tex.2000), citing *York v. City of Witchita Falls*, 944 F.2d 236,

242 (5th Cir. 1991).  Indeed, pursuant to that Act, the plaintiffs may take leave without their

amount of pay being reduced for absences. *See* Long declaration at ¶ 4.  Furthermore, under

29 C.F.R. § 541.5d, an employer may also reduce the pay of a public sector employee for partial day absences, if certain circumstances are met.

In spite of their arguments otherwise, the plaintiffs have offered no evidence that any of them have suffered a reduction in pay for missing portions of a workday, regardless of what increments they must use to account for their time. Plaintiffs have made no argument to this court which recognizes they are subject to 29 C.F.R. § 541.5d. Rather, they argue that under case law pertaining solely to private sector employees, they cannot be considered salaried employees. Plaintiffs' brief in opposition at 9. Although plaintiffs can chose to ignore regulations promulgated according to law, this court can not. As such, this court finds that, under 29 C.F.R. § 541.5d, defendants may dock the plaintiffs' pay for partial day absences, in accordance with that regulation, without affecting the plaintiffs' exempt status.[35]

Even assuming plaintiffs were private sector employees, and hence not subject to 29 C.F.R. § 541.5d, the plaintiffs would still have to present some evidence that their pay has actually been reduced for a partial day absence. The United States Supreme Court adopted the test devised by the Secretary of Labor, stating that the salary basis test is not satisfied with pay reduction for partial day absences only "if there is either an actual practice of making deductions or an employment policy that creates a 'significant likelihood' of deductions." *Auer*, 519 U.S. at 461, 117 S.Ct. at 911.[36] Thus, this court is required to

---

[35]The court again notes that, even though their employer may do so, there is no evidence here that this has been done.

[36]The requirement of actual deductions had been imposed earlier by the Eleventh Circuit Court of Appeals in *Atlanta Professional Firefighters Union, Local 134 v. Atlanta*, 920 F.2d 800

consider whether the plaintiffs have shown either an employment policy creating a significant likelihood of pay deductions or an actual practice by the employer of making pay deductions. *See Yourman*, 229 F.3d at 128. The plaintiffs offered no evidence that any one of them has ever had his or her pay reduced or that there is a significant likelihood of this occurring. The plaintiffs have not offered any evidence of any policy of defendant, oral or written, which could reduce their pay for such an absence. Under *Auer*, a significant likelihood of pay reductions is shown by the existence of a "clear and particularized policy – one which effectively communicates that deductions *will be* made in specified circumstances." *Auer*, 519 U.S. at 461, 117 S.Ct. at 911. *See also Yourman*, 229 F.3d at 129 ("The appellants have shown only that such deductions were permitted, not that they would 'in fact be made in specified circumstances'").

Similarly, plaintiffs' arguments that defendant's requirement that they work set schedules, or work eight hours a day, forty hours a week, means they are not salaried also fails. An employer may require an employee to make up time missed from work so that he or she works forty hours in a week. *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261 (5th Cir.2000). Requiring the use of time sheets or time cards also does not affect an individual's status as an exempt employee. *McGuire v. City of Portland,* 159 F.3d 460, 464 (9th Cir.1998); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir.1997); *Kuchinskas v. Broward County*, 840 F.Supp. 1548, 1556 (S.D.Fla.1993), *aff'd*, 86 F.3d 1168 (11th

---

(11th Cir.1991).

Cir.1996). Neither requiring a salaried employee to work eighty hours every two weeks, nor deducting accumulated vacation and sick time in increments of less than one day, affects status as an exempt employee. *See Doherty v. Center for Assisted Reproduction, P.A.*, 108 F.Supp.2d 672, 677-78 (N.D.Tex.2000). Rather, the relevant inquiry is whether any salary was deducted for failure to work the required hours. *Id.,* citing *York*, 944 F.2d at 242; *Whitmore v. Port Authority of New York & New Jersey*, 907 F.2d 20, 21 (2nd Cir.1990). Plaintiffs here have not produced any evidence that their salaries are **reduced** for failing to work the required hours. The fact that leave must be taken when they are not present at work does not change the nature of this inquiry. Nor does non-monetary discipline affect an employees' status as "exempt." *Haywood v. North American Van Lines*, 121 F.3d 1066, 1070 (7th Cir.1997).

## CONCLUSION

Because the plaintiffs have failed to show that they are not "exempt" employees for purposes of the FLSA, the court finds that the defendant is entitled to judgment in its favor and against the plaintiffs on all counts of the complaint.

**DONE** and **ORDERED** this the _23_ day of May, 2002.

Inge P. Johnson
United States District Judge